IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RICHARD A. D.,

                    Plaintiff,

          v.                              Civil Action No.
                                          1:20-CV-1154 (DNH/DEP)

COMMISSIONER OF SOCIAL SECURITY

                    Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

OSBORN LAW, P.C.                LINDSAY TRUST, ESQ.
43 West 43rd Street, Suite 131
New York, NY 10036

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          AMY BLAND, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that he was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which he has applied.  The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.  For the reasons set forth below, I recommend that this matter be remanded to the Commissioner for further proceedings.

I.    BACKGROUND

Plaintiff was born in April of 1981, and is currently forty years of age. He was thirty-one years old at his alleged onset date of disability – April 1, 2013 – and thirty-five years old the time of his application for benefits in December of 2016.  Plaintiff stands six-foot and five inches in height, and has weighed between three hundred ninety-six and four hundred forty-eight pounds at various relevant times.  Plaintiff resides in an apartment with his girlfriend in Highland, New York.

Plaintiff reported schooling up to the tenth grade.  He has worked in the past as a fast food worker, retail sales clerk, forklift operator, and landscaper doing lawn mowing.

Physically, plaintiff alleges that he suffers from pain in his lower back

related to his spine.  He is unable to undergo any surgery for his spine until he loses a significant amount of weight.  Throughout the period at issue, he was attempting to arrange for weight loss surgery, but needed to lose a certain amount of weight in order to qualify for that procedure.  As is relevant to his applications, plaintiff treated for his physical impairments primarily with Dr. Quasar Choudhury, M.D., and also with Dr. Esteban Cuartas, M.D., and at the Vassar Brothers Medical Center.  Plaintiff is also consistently noted to be morbidly obese, and additionally suffers from allergies and asthma.  Mentally, Plaintiff alleges suffering from depression, which he has treated with medication and therapy with Dr. Choudhury and Cornerstone Psychiatric.  Plaintiff has been prescribed several medications over time including, though not limited to, Oxycodone, Robaxin, Citalopram, Mirtazapine, Albuterol, and Ventrolin.

Plaintiff has reported that he does not do chores around the house because of pain, except for feeding his dogs.  He has a driver's license but does not drive often because it hurts him.  Plaintiff spends his days lying in bed or sitting in his recliner chair watching television, listening to music, reading, or watching movies with his girlfriend.  He has no social life apart from his girlfriend.  His back pain is worsened by doing chores, walking, standing, bending over, or trying to pick things up.  He can lift only two or

three pounds, walk about ten yards, sit for only ten or fifteen minutes at a time before needing to change positions, and can sit or stand for a total of two or three hours each in a workday.  Plaintiff's pain medications make him extremely tired and dizzy, which makes it difficult for him to pay attention.  He used to receive treatment for his mental health, but he is not currently in treatment for that.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Title II and Title XVI of the Social Security Act, respectively, on December 17, 2016.[1]  In support of those applications, he claimed to be disabled due to degenerative discs, lower lumbar strain, a small spinal cavity that causes back pain, and intervertebral disc displacement in the lower lumbar region.

A video hearing was conducted on February 14, 2019, by Administrative Law Judge ("ALJ") John A. Pottinger, to address plaintiff's applications.  Following that hearing, ALJ Pottinger issued an unfavorable decision on May 6, 2019.  That opinion became a final determination of the agency on July 22, 2020, when the Social Security Appeals Council

---

[1]    For the purposes of his Title II application, his date last insured was December 31, 2017.

("Appeals Council") denied plaintiff's request for review of the ALJ's
decision.

B.    The ALJ's Decision

In his decision, ALJ Pottinger applied the familiar, five-step sequential
test for determining disability.  At step one, he found that plaintiff had not
engaged in substantial gainful activity during the relevant period.  The ALJ
next found at step two that plaintiff suffers from severe impairments that
impose more than minimal limitations on his ability to perform basic work
functions, including degenerative disc disease of the lumbar spine, obesity,
gout, and asthma.  As part of his step two finding, ALJ Pottinger found that
plaintiff's obstructive sleep apnea, fatty liver, gastroesophageal reflux
disorder, hyperlipidemia, vitamin D deficiency, and depression do not
constitute severe impairments.

At step three, ALJ Pottinger examined the governing regulations of
the Commissioner setting forth presumptively disabling conditions (the
"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that
plaintiff's conditions do not meet or medically equal any of the listed,
presumptively disabling conditions set forth in the Commissioner's
regulations, specifically Listings 1.04, 3.03, 12.04, and 14.09.  The ALJ also
considered whether plaintiff's obesity met or medically equaled a listed

impairment, in accordance with Social Security Ruling ("SSR") 02-1p,

noting that there is no specific Listing related to obesity.

ALJ Pottinger next surveyed the available record evidence and

concluded that plaintiff retains the residual functional capacity ("RFC") to

perform a range of sedentary work,[2] as defined by the controlling

regulations, with the following exceptions:

> he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. He can have no more than occasional exposure to fumes, odors, dust, gases, industrial chemicals, and poorly ventilated areas, no more than occasional exposure to humid or outdoor environment or work environments containing exposure to wetness, and no more than occasional exposure to extreme heat or extreme cold.

ALJ Pottinger went on to step four to conclude that plaintiff is unable

to perform the demands of his past relevant work.  Proceeding to step five,

---

[2]      By regulation, sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.   Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

the ALJ elicited testimony from a vocational expert regarding how plaintiff's limitations would impact the occupations he could perform with the range of sedentary work specified above, and concluded based on the vocational expert's testimony that plaintiff remained able to perform work available in the national economy, citing as representative occupations document preparer and stuffer.  Based upon these findings, ALJ Pottinger concluded that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on September 22, 2020.[3]  In support of her challenge to the ALJ's determination, plaintiff raises several arguments, contending that (1) the ALJ erred in affording little weight to the opinion from treating physician Dr. Choudhury, in that he failed to properly apply the treating physician rule and provide a sufficient explanation for the rejection of that opinion and further failed to properly and fairly consider all the evidence in the record; (2) the RFC determination is not supported by substantial evidence because the ALJ failed to consider the side effects of plaintiff's opioid medications, including extreme tiredness, and how such

---

[3]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

side effects would impact his ability to remain on task and concentrate; and

(3) the ALJ relied on unreliable vocational expert testimony to support his

step five finding because the job of document preparer is obsolete and

testimony regarding the number of that job available in the national

economy varies widely from case to case.  Dkt. No. 13-1.

Oral argument was conducted in this matter, by telephone, on

January 26, 2022, at which time decision was reserved.

III.    DISCUSSION

    A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

though the ultimate conclusion reached is arguably supported by

substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.   <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaged in substantial gainful activity ("SGA"); if so, then

the claimant is not disabled, and the inquiry need proceed no further.  *Id.*

§§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level

constituting SGA, then the second step involves an examination of whether

the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether

11

that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.    <u>Analysis</u>

        1.    <u>The ALJ's Assessment of Plaintiff's RFC and Subjective Reports</u>

Plaintiff argues that the RFC finding is not supported by substantial evidence because the ALJ failed to consider the side effects of his opioid medication. Dkt. No. 18-19. Plaintiff specifically alleges that the opioid medication taken for his pain causes extreme tiredness that would result in him being off-task or unable to concentrate to an adequate extent. *Id.*

An ALJ must take into account subjective complaints of pain and other symptoms in making the five-step disability analysis. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone v. Apfel*, 70 F. Supp. 2d 154, 151 (N.D.N.Y. 1999) (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain. *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984). When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a

medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[4]  20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p.  If the claimant's testimony concerning the intensity, persistence or limiting effects associated with his or her pain or other symptoms is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including (1) daily activities, (2) location, duration, frequency and intensity of symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of any medications taken, (5) other treatment received, and (6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi); SSR 16-3p.

If the ALJ finds that a claimant's subjective testimony should be rejected, he or she must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  The ALJ's

---

[4]    In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 432(d)(5)(A).

decision need not contain a discussion of all of the potentially relevant factors listed above, so long as it is clear from the decision that the ALJ considered all of the evidence and that he or she provided specific reasons for his or her determination as to the intensity, persistence, and limiting effect of the claimant's symptoms.  *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss certain factors did not require remand because the ALJ provided specific reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision").  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

As was already noted, plaintiff argues that the ALJ erred in failing to consider whether the side effect of tiredness from his opioid medication should result in a restriction in the RFC related to the ability to be on task and concentrate.  In support of this argument, plaintiff points solely to his testimony at the hearing that he takes oxycodone three times per day for pain relief, and that it makes him extremely tired and dizzy.  Dkt. No. 13-1, at 35-36.  He testified that he has been taking oxycodone for approximately three years and that, although it resolves his pain, it makes him "really

tired" and impacts his ability to pay attention.  Administrative Transcript

("AT") at 38.[5]  However, at the same hearing, plaintiff reported that his daily

activities include watching television, listening to music, and sometimes

reading, all of which arguably require some amount of ability to focus and

pay attention.  AT 32.  Additionally, records of plaintiff's treatment note that

plaintiff often denied fatigue and dizziness.  *See e.g.*, AT 224, 233, 242,

252, 273, 279, 286, 292, 298, 304, 308, 313, 317, 322, 327.  Some

treatment notes indicate, regarding plaintiff's mental health, that plaintiff

reported feeling tired or having little energy "nearly every day" with trouble

concentrating on "several days."  AT 272, 278, 286, 291, 297, 304, 308,

313, 317, 322, 327, 519, 528, 539.   However, those notations were made

also on occasions when plaintiff was not even taking oxycodone,

something which suggests that the tiredness plaintiff reported was not

necessarily related to oxycodone.  AT 276, 281, 328.  Additionally, the

record contains what appears to be the questionnaire on which plaintiff

made those responses, and it is dated December 5, 2016.  AT 492.  It is

therefore not clear whether the notations regarding energy and

concentration in the treatment records were all based on this single

---

[5]     The Administrative Transcript is found at Dkt. No. 10, and will be referred to as
"AT __."

questionnaire rather than on ongoing contemporary assessments.

In his decision, however, the ALJ discusses none of this evidence, not even plaintiff's reports that his medication makes him tired.  Although there is certainly not any clear objective medical evidence to support plaintiff's allegations of side effects, the ALJ's complete failure to acknowledge plaintiff's reports or to reconcile the portions of the record that were unclear as identified above suggests error in that it is not clear that the ALJ appropriately considered plaintiff's reports of side effects that impact his work-related functioning.  *See Wilson v. Colvin*, 14-CV-5666, 2015 WL 5786451, at *29 (S.D.N.Y. Sept. 29, 2015) (noting that, because the alleged side effects were ongoing and the ALJ did not discuss them at all, there was no clear indication that the ALJ actually did consider those side effects when making either the credibility or RFC finding); *Colvin v. Astrue*, 09-CV-0132, 2011 WL 4055324, at *6 (N.D.N.Y. June 10, 2011) (Bianchini, M.J.) (finding error where the ALJ did not address the reported side effects of dizziness, tiredness, fatigue, and sleepiness despite the fact that plaintiff testified to those effects and his statements were at least partially corroborated by a doctor's notation that her medications were associated with sedation).  Even if this error is not regarded as harmful on its own, I recommend a finding that the ALJ's overall assessment of

16

plaintiff's subjective reports is not supported by substantial evidence for the reasons outlined below, an error which is compounded by his failure to acknowledge or weigh an opinion from one of plaintiff's treating physicians.

The record includes an opinion found in a treatment note from Dr. Esteban Cuartas, to the effect that plaintiff should avoid heavy lifting, sitting upright for prolonged periods of time, bending forwards, and squatting. AT 206. It does not appear that the ALJ acknowledged or weighed this opinion.[6] Such an omission is error because, apart from the regulatory requirement to weigh all opinion evidence in the record, the statement that plaintiff should avoid sitting upright for prolonged periods of time appears to be inconsistent with the ALJ's finding that plaintiff can perform sedentary work, which requires sitting most of the workday. *See Sanjurjo v. Colvin*, 14-CV-0085, 2015 WL 7738046, at *4-5 (N.D.N.Y. Dec. 1, 2015) (Hurd, J.) (collecting cases). The ALJ notably did not include any limitation that would accommodate for the need to avoid sitting upright for prolonged

---

[6] The Commissioner asserted at oral argument that Dr. Cuartas' statements should not be considered as an opinion because there is no indication that it was meant to represent plaintiff's functioning for a twelve-month period. However, even if that is the case, given that it is not clear for what length of time the restrictions outlined by Dr. Cuartas were intended to apply, it was the ALJ's responsibility to resolve such questions after assessing Dr. Cuartas' statements, not the function of this court to do so in the first instance. Because Dr. Cuartas indicated specific functions that plaintiff, in his opinion, should avoid, I see no reason why his statements should not have been assessed as a medical opinion.

periods, such as the ability to recline at times or change positions in an appropriate manner.

Significantly, at the hearing the ALJ asked the vocational expert whether an ability to stand up every thirty minutes for five or ten minutes would impact plaintiff's ability to perform the identified jobs.  AT 46-47.  The vocational expert responded that such a sit-stand option would not change her opinion regarding the available jobs so long as plaintiff would be able to remain at his workstation while standing.  *Id.*  However, Dr. Cuartas did not opine that plaintiff needed simply to avoid sitting for prolonged periods of time, but rather that he needed to avoid sitting *upright* for prolonged periods of time.  It is therefore not apparent that the vocational expert's testimony regarding a sit-stand option fully encompasses Dr. Cuartas' opinion in such a way that would render the ALJ's failure to assess and weigh that opinion harmless.  Indeed, plaintiff reported at the hearing that he spends most of the day lying in bed or sitting in his recliner.  AT 32.  He also reported that he cannot perform a seated job because he cannot sit for more than ten or fifteen minutes at a time without changing positions, which also would include changing positions to recline or lay down.  AT 41.  Plaintiff's subjective reports therefore appear to support Dr. Cuartas' opinion and further suggest that the vocational expert's response is insufficient to

render the error here harmless.  Additionally, there is no specific objective medical evidence that obviously and conclusively contradicts plaintiff's statements or Dr. Cuartas' opinion.  I therefore recommend that this matter be remanded based on the ALJ's failure to assess Dr. Cuartas' opinion.[7]

Further, the ALJ found that plaintiff's allegations that he had difficulty lifting, standing, walking, bending or sitting for more than ten to fifteen minutes and that he needed to lie down or recline to relieve his pain were not consistent with the evidence, almost solely based on notations in treating physician Dr. Quasar Chaudhury's treatment notes that indicated he was working as a landscaper throughout much of the relevant period. AT 17.  Indeed, this appears to be the only clear reason the ALJ provides for declining to accept plaintiff's subjective complaints other than a rather conclusory assertion that he accepted them "wherever testimony is consistent with the objective record."  AT 17.  At the hearing, the ALJ asked plaintiff whether he had done any work as a landscaper after 2013, to which plaintiff replied that he tried to do it in 2017, but it did not work out, and that he only worked for three weeks.  AT 33.  The ALJ is correct in

---

[7]     This opinion was rendered on December 16, 2016, which I note is after plaintiff's alleged onset date of April 1, 2013.  Although plaintiff did not file his disability applications until the next day, December 17, 2016, there is no evidence that plaintiff's condition improved or changed in that span of time, or even into the relevant period, such that Dr. Cuartas' opinion would no longer be a reliable or contemporary estimate of plaintiff's functioning.

stating that Dr. Chaudhury's treatment notes consistently recount in the prefatory history section that plaintiff "works as a landscaper."  *See e.g.*, AT 272, 278, 285, 291, 297, 304, 308, 313, 317, 322, 327, 490, 519, 541, 547. However, a review of Dr. Chaudhury's notes in general raise suspicions about whether the information in that section is based on current reports, or instead pieces of information that were automatically transferred to subsequent treatment notes.  Notably, much of the information in those sections does not appear to change over the years, other than the addition of other notations, and there is often inconsistent and confusing information present in them that significantly calls into question whether the reports in those sections are contemporary reports made by plaintiff at each new examination.  The record contains a handwritten information form from Horizon Family Medical Group – the practice in which Dr. Chaudhury works – dated December 5, 2016, in which plaintiff listed his occupation as "landscaper."  AT 490.  There are no subsequent such forms in the record, which further renders it questionable whether the ongoing notations in Dr. Chaudhury's treatment notes to the effect that plaintiff was working as a landscaper were contemporary assessments.  To make matters more confusing, in a treatment note from Orthopedics and Sports Medicine from December 8, 2016, only a few days after the visit with Dr. Chaudhury,

plaintiff is noted to be "currently unemployed." AT 500. The ALJ does not acknowledge this discrepancy or explain how he resolved the conflict between them. Nor did he question plaintiff about the notations in Dr. Chaudhury's treatment notes. Given the ALJ's failure to reconcile the evidence regarding plaintiff's work as a landscaper, I cannot say that the ALJ's reliance on the notations in Dr. Chaudhury's treatment note is a sufficient basis to support his rejection of plaintiff's subjective reports. Although it is true that "the ALJ need not cite to every piece of evidence or reconcile every conflict in the record, 'the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence.'" *Allington v. Berryhill*, 17-CV-6202, 2018 WL 4879751, at *3 (W.D.N.Y. Oct. 9, 2018) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)). Because the ALJ placed great reliance on the notations regarding plaintiff's work activity in Dr. Chaudhury's treatment notes to support both his finding regarding plaintiff's subjective reports and his rejection of Dr. Chaudhury's own opinion, this was a conflict that should have been explicitly identified, and the ALJ was bound to explain how he arrived at a resolution. *See Lianna M. v. Kijakazi*, 20-CV-0615, 2021 WL 4150102, at *7 (N.D.N.Y. Sept. 13, 2021) (Kahn, J.) (noting that "[i]t is

within the province of the ALJ to resolve conflicts in the medical evidence so long as the ALJ explains how the evidence conflicts and how they resolve the conflict") (citing *Gough v. Saul*, 799 F. App'x 12 (2d Cir. 2020)). Again, it is not even clear in this case that the ALJ recognized that any discrepancy in the evidence existed, which calls into question whether he conducted an adequate and full review of the record.

As to the ALJ's reliance on the objective medical evidence as a basis for his determination on plaintiff's subjective reports, despite a fairly voluminous record spanning more than two years, the ALJ's discussion of the objective medical evidence related to plaintiff's spinal impairment in particular amounts to only a few short paragraphs which do not provide a representative indication of the medical findings. AT 17. For example, the ALJ does not appear to acknowledge that Dr. Chaudhury continued to consistently observe decreased range of motion in the lumbar spine and paraspinal muscle tenderness at every examination throughout 2017, 2018, and 2019. AT 228, 237, 246, 276, 282-83, 289, 301, 306, 310, 315, 319, 324, 522-23, 531, 543, 547. The ALJ did note that plaintiff "continued to experience periodic flare ups of [gout in his big toe] through February 2019," but provides no real discussion of the evidence related to plaintiff's spinal condition after March 2017. AT 17. Although, as was already noted,

the ALJ was not required to discuss every piece of evidence in the record, his complete failure to even acknowledge the extent of the observations regarding plaintiff's lumbar spine after March 2017, along with his silence on Dr. Cuartas' opinion and his failure to acknowledge or resolve the discrepancy in the evidence related to plaintiff's work status, calls into question whether he fully and adequately considered and accounted for the evidence before him, and prevents meaningful review of whether his reliance on the objective medical evidence as the basis for his finding regarding plaintiff's subjective reports is supported by substantial evidence.

Based on the foregoing, I recommend that this matter be remanded for further administrative proceedings.[8]

### 2.   The ALJ's Findings Regarding Dr. Chaudhury's Opinion

Plaintiff also argues that the ALJ erred in affording little weight to the opinion from Dr. Choudhury because the ALJ failed to identify what treatment notes were inconsistent with his opinion and because the statements in Dr. Choudhury's treatment notes that plaintiff was working as a landscaper are misleading.  Dkt. No. 13-1, at 16-17.

---

[8]     The fact that plaintiff did not specifically raise this issue in his brief does not preclude remand.  *See Stacy D. v. Comm'r of Soc. Sec.*, 19-CV-0228, 2021 WL 1975399, at *4 (W.D.N.Y. May 18, 2021) (sua sponte finding that the ALJ's assessment of plaintiff's mental impairment was not supported by substantial evidence); *Angueira v. Berryhill*, 17-CV-6099, 2019 WL 1230768, at *3 n.3 (E.D.N.Y. Mar. 15, 2019) (noting that it was remanding based on issues neither of the parties had raised).

Because plaintiff's applications were filed in 2016, the former regulations regarding consideration of opinion evidence, including the treating physician rule, apply to his claims.  Under those regulations, the ALJ was required to consider whether the treating physician's opinion was entitled to controlling weight, or, if not, what degree of weight it is otherwise entitled to by considering factors such as (1) the frequency, length, nature, and extent of treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist.  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019).

The ALJ found that Dr. Choudhury's opinion was entitled to very little weight because (1) it directly conflicts with his treatment notes that show good spirometry results, (2) notwithstanding the notations in his treatment notes that plaintiff had lumbar pain and decreased range of motion, his statement that plaintiff can never sit or stand is not consistent with plaintiff's reports to him that he has been working as a landscaper, and (3) plaintiff reported he had been shoveling snow in November 2018.  AT 17-18. Overall, the ALJ concluded that Dr. Choudhury's opinion is "highly inconsistent with his own treatment notes over the course of two years and the claimant's apparent activities."  *Id.*

24

To the extent that the ALJ relies on the "reports" of plaintiff working as a landscaper and plaintiff's "apparent activities," I find that these are not sufficiently good reasons supported by substantial evidence under the circumstances. As was previously discussed, there is a significant, unreconciled question regarding whether Dr. Chaudhury's treatment notes were accurate to the extent they suggest that plaintiff was working as a landscaper throughout 2017, 2018, and 2019, and the ALJ's failure to resolve the conflicts and questions presented by the evidence prevents meaningful review of whether the ALJ reasonably relied on such statements. Additionally, the only "apparent activities" the ALJ cites in the decision are the purported landscaping work and a report that plaintiff had been shoveling on a single occasion in 2018. Given that the landscaping work is in question, a single instance of plaintiff shoveling is simply not substantial evidence to support the ALJ's finding that Dr. Chaudhury's opinion must be rejected.

Similarly, although the ALJ found that Dr. Chaudhury's opinion was "highly inconsistent" with his own treatment notes, the ALJ did not provide much discussion of any of the treatment in the record, as was already discussed. Although the ALJ does note that Dr. Chaudhury observed "some lumbar pain and decreased range of motion," he does not appear to

25

acknowledge that those findings were noted on every examination Dr.

Chaudhury conducted, and he did not explain how those findings are

necessarily inconsistent with the entirety of Dr. Chaudhury's opinion.

Additionally, the ALJ's specific rejection of the opined limitations in sitting

and standing again invokes the unresolved issue of whether, and during

what period, plaintiff worked as a landscaper.

Based on the issues already identified related to the ALJ's failure to

reconcile evidence in the record regarding key issues underpinning the

ALJ's rationale for rejecting Dr. Chaudhury's opinion, I recommend that, on

remand, the ALJ should also provide a new assessment of Dr. Chaudhury's

opinion that takes into account and resolves the other identified errors.

### 3.   The ALJ's Step Five Finding

Lastly, plaintiff argues that the ALJ erred in relying on unreliable

testimony from the vocational expert related to the numbers of the job of

document preparer that are present in the national economy.  Dkt. No. 13-

1, at 19-21.  Because there are grounds to remand this case that might

very well impact the ALJ's finding at step five, there is no need to decide

plaintiff's step five argument at this time.  However, I note that any error in

relying on the vocational expert's testimony related to that specific job

would be harmless, given that the other job identified by the vocational

expert, and accepted by the ALJ – stuffer – was found to exist in numbers of 386,520 jobs nationally.  AT 19, 46.  Because the number of jobs required to constitute sufficient numbers has been found to be "fairly minimal," this one alternative job alone would suffice to meet the ALJ's burden at step five.  *See Shane C. v. Comm'r of Soc. Sec.*, 20-CV-0895, 2021 WL 5906236, at *9 (N.D.N.Y. Dec. 14, 2021) (Peebles, M.J.) (finding that, even if there was error in the vocational expert's testimony regarding two jobs, such errors were harmless because the vocational expert also testified as to a third job that existed in numbers of 41,518 in the national economy) (collecting cases); *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015) (noting that courts have held that significant number of jobs is fairly minimal).  Although plaintiff argues that the unreliability to the vocational expert's testimony regarding one job would call into question the reliability of her testimony as a whole, she offers no reasons why that would be the case, given that her argument focuses on the variability of numbers provided by different vocational experts in various cases where they have opined a claimant can perform the job of document preparer specifically.  Dkt. No. 13-1.  As I can see nothing that would raise questions regarding the reliability of the vocational expert's testimony related to the job of stuffer, I recommend a finding that

27

any potential error at step five would necessarily be harmless.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the Commissioner's determination is not supported by substantial evidence,[9] and that the matter be remanded to the Commissioner for further consideration.  Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 18) be DENIED, and this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this this Order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE</u>

---

[9]    Because the record does not contain persuasive evidence of disability, I recommend that the matter be remanded without a directed finding of disability, for further consideration.  *See Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 11 (2d Cir. 2020) (noting that remand with a directed finding of disability is appropriate only when "the record provides persuasive evidence of total disability that renders any further proceedings pointless").

APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    February 2, 2022
           Syracuse, NY

                             DAVID E. PEEBLES
                           U.S. Magistrate Judge